UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **NATIONWIDE AGRIBUSINESS INSURANCE CO** | **CASE NO.  6:20-CV-00239** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **HYSTER-YALE GROUP INC ET AL** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

**MEMORANDUM RULING**

The present matter before the Court is Deep South Equipment Co.'s Motion for Summary Judgment [ECF No. 18]. Plaintiff has opposed the Motion. For the reasons set forth below, the Court DENIES the Motion.

**I.**
**BACKGROUND**

On January 4, 2019, Michael Melancon ("Melancon"), an employee of Schilling Distributing Company, LLC, ("Schilling"), was injured while operating a Hyster B60 ZAC riding pallet jack, Unit 18 ("pallet jack") while performing his job duties at Schilling's facility in Lafayette, Louisiana.[1] The pallet jack was sold and shipped to Schilling by defendant Deep South Equipment Co. ("Deep South") in 2013. Defendants Hyster-Yale Group, Inc., Hyster-Yale Materials Handling, Inc., and NACCO Materials Handling Group, Inc. (collectively, "Hyster-Yale")  manufactured the pallet jack.[2] The injury to Melancon occurred when the pallet jack he was operating stopped suddenly, causing Melancon to fall forward from the machine. Plaintiff's

---

[1] Petition for Damages, ECF No. 1-2, ¶ V.
[2] *Id.*, at ¶¶ III – IV.

expert, Jeremy Hoffpauir, opined that the "sudden stop … was consistent with the lift truck's brakes being applied unexpectedly."[3] He further opined that the "wires of the regen brake switch and the brake switch … on the lift truck … were smashed and severed."[4] As a result, according to Hoffpauir, "the brake switch circuit lost continuity due to the wiring damage which resulted in the brakes being applied unexpectedly …."[5]

Plaintiff Nationwide Agribusiness Insurance Co. ("Plaintiff"), Schilling's worker's compensation carrier, commenced the present action to recover worker's compensation paid to Melancon due to his injuries.[6] The lawsuit was filed in the Fifteenth Judicial District Court for the Parish of Lafayette, State of Louisiana against Hyster-Yale and Deep South. The case was subsequently removed to this Court based upon diversity jurisdiction pursuant to 28 U.S.C. § 1441.[7] In the Petition for Damages, Plaintiff alleges causes of action against Deep South for:

   a.  failing to provide a reasonably safe product for the work environment;

   b.  failing to warn of hazards for which it either knew or should have known;

   c.  failing to comply with express or implied warranties of fitness for use in industrial spaces;

   d.  failing to assure that the pallet jack in question met the safety needs of the work environment for which it was supplied;

   e.  improperly repairing the pallet jack and improperly routing the brake wiring which damaged or severed the wiring, causing the sudden and unexpected braking of the vehicle; and

---

[3] Affidavit of Jeremy Hoffpauir, ECF No. 31-2 at ¶5.
[4] *Id.* at ¶ 6.
[5] *Id.* at ¶ 7.
[6] *Id.*, at ¶ XXIII.
[7] ECF No. 1.

  f.   such further and other acts of neglect, fault, omission, or commission to be proven at the

  trial of this cause.[8]

In connection with this case, Plaintiff retained Jeremy Hoffpauir, a mechanical engineer, as its

expert. Hoffpauir submitted an expert report and a supplemental report opining on the causes of

the accident. Mr. Hoffpauir opines, in part, that:

1) The sudden stop without control handle movement was consistent with the lift truck's brakes being applied unexpectedly.

2) The wires of the regen brake switch and the brake switch that were installed on the lift truck at the time of the incident were smashed and severed.

3) As the lift truck entered the warehouse, the brake switch circuit lost continuity due to the wiring damage which resulted in the brakes being applied unexpectedly without Mr. Melancon moving the control handle to the vertical or horizontal positions.

4) The available evidence indicated the shaft sleeve was not installed properly which resulted in the wiring for the brake switches being smashed between the bottom of the cover and the top of the sleeve which led to the subsequent severing of the brake switch wiring.

5) There was no evidence to indicate employees of Schilling Distributing Company performed repairs on the lift truck, and, therefore, manipulation of the brake switch wiring and/or the sleeve by Schilling Distributing Company employees is unlikely.

6) There was not sufficient evidence to determine if the improper installation of the sleeve occurred when the lift truck was assembled by the manufacturer or during 1 of the repairs performed by Deep South Equipment.

7) Removal of the tiller swivel cover was required to view the location of the damage to the brake switch wiring. Removal of this cover is not required for the pre-operation inspection, and, therefore, a complete pre-operation inspection of the lift truck would not have prevented the incident. [9]

---

[8] Petition for Damages, ECF No. 1-2, ¶ XXII.
[9] ECF No. 31, Exhibit A-2, U.S. Forensic Hyster Lift Truck Evaluation.

## II.
### LAW AND ANALYSIS

### A.      Summary Judgment Standard

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought."[10] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[11] "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party."[12] As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[13]

When reviewing evidence in connection with a motion for summary judgment, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached."[14] "Credibility determinations are not part of the summary judgment analysis."[15] Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the

---

[10] Fed. R. Civ. P. 56(a).
[11] *Id.*
[12] *Quality Infusion Care, Inc. v. Health Care Service Corp.*, 628 F.3d 725, 728 (5th Cir. 2010).
[13] *Lindsey v. Sears Roebuck and Co.,* 16 F.3d 616, 618 (5th Cir.1994) (internal citations omitted).
[14] *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir.2001); *see also Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (court must view all facts and evidence in the light most favorable to the non-moving party).
[15] *Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002).

existence of an element essential to that party's case, and on which that party will bear the burden of proof."[16]

### B.      Whether Deep South Breached a Duty of Care.

Where, as here, jurisdiction is based on diversity of citizenship, the Court applies state substantive law.[17] The parties do not dispute that Louisiana law applies to this case. Courts in Louisiana courts apply a duty-risk analysis in determining whether liability exists under the facts of a particular case.[18] Under this analysis, Plaintiff must prove five separate elements: (1) the defendant had a legal duty to conform his or her conduct to a specific standard of care; (2) the defendant failed to conform his or her conduct to the appropriate standard of care; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) actual damages.[19]

Deep South argues that there is no evidence in the summary judgment record that Deep South was negligent under Louisiana law. According to Deep South, there was no maintenance agreement in place between Deep South and Schilling. Deep South also contends that Schilling did not request service of any kind on the pallet jack during the ten (10) months prior to the accident, nor did Schilling ever request that Deep South service the brakes on the pallet jack until after the accident.

Turning to the summary judgment record, Deep South ordered the pallet jack for Schilling as a new unit on August 21, 2013.[20] Hyster-Yale delivered the pallet jack to Deep South, and Deep

---

[16] *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (alterations in original) (quoting *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)).
[17] *Moore v. State Farm Fire & Cas. Co.,* 556 F.3d 264, 269 (5th Cir. 2009); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).
[18] *Bufkin v. Felipe's Louisiana, LLC*, 2014-0288, p. 4-5 (La. 10/15/14), 171 So.3d 851, 855.
[19] *Id.*
[20] ECF No. 18, Exhibit A, Deposition of Lenn Scallan, p. 57, lns. 9-12; Exhibit B, Deposition of James Bradley Riles, p. 31, lns. 23-25; p. 32, ln. 4.

South performed a pre-delivery inspection, installed a battery, and placed Deep South decals on the unit.[21] Deep South then delivered the pallet jack to Schilling on December 2, 2013.[22] Schilling and Deep South did not enter into any written maintenance contracts, master service agreements, or written agreements of any kind.[23] Instead, whenever Schilling needed maintenance on any of their pallet jacks, Schilling would call Deep South and schedule repairs.[24] Hyster-Yale, the manufacturer of the pallet jack, recommended inspection of the pallet jacks every 2,000 hours or a year, and at 250 hour intervals for lubrication and fluids.[25] Despite those recommendations, Schilling was requesting preventative maintenance at well over the recommended 2,000 hours, and in some instances, up to 5,780 hours.[26] Deep South never made any repairs without Schilling issuing a work order.[27] The work orders reflect that Deep South performed maintenance on April 22, 2016, [28] charger cable work on January 6, 2017, and preventative maintenance on April 14, 2017.[29] The last time the pallet jack was serviced prior to the accident was March 22, 2018, when Deep South performed repairs on the unit's "main line contractor voltage."[30]

      The evidence in the summary judgment record creates genuine questions of material fact as to whether Deep South owed a legal duty of care and failed to conform its conduct to a specific standard of care. The fact that Deep South had no maintenance agreement with Schilling is not dispositive because the record shows that Schilling called Deep South to perform maintenance on

---

[21] ECF No. 18, Exhibit A, Deposition of Lenn Scallan, p. 59, lns. 1-11; p. 61, lns. 16-23.

[22] ECF No. 18, Exhibit A, Deposition of Lenn Scallan, p. 62, lns. 4-11; Exhibit C, Deposition of James Riles Schilling, p. 33, lns. 8-18; p. 34. Ins. 1-3; Exhibit C Delivery Report.

[23] ECF No. 18, Exhibit B, Deposition of James Bradley Riles, p. 50, lns. 21-25; p. 52, lns. 10-13.

[24] Id., at p. 50, lns. 11-20.

[25] Id., at p. 44, lns. 18-21.

[26] Id., p. 39, lns. 17-22; p. 44, lns. 16-24; p. 45, lns. 3-10; p. 49, lns. 12- 25; p. 50, lns. 1-2.

[27] ECF No. 18, Exhibit A, Deposition of Lenn Scallan, p. 66, lns. 16-19; Exhibit C, Deposition of James Riles Schilling, p. 25, lns. 18-20.

[28] ECF No. 18, Exhibit D, Work Orders.

[29] ECF No. 18, Exhibit A, Deposition of Lenn Scallan, p. 44, lns. 14-15, 18-19, 24-25; p. 45, ln. 12; Exhibit B, Deposition of James Bradley Riles, p. 48, lns. 21-24.

[30] ECF No. 18, Exhibit A, Deposition of Lenn Scallan, p. 45, lns. 20-23; Exhibit C, Deposition of James Bradley Riles, p. 48, lns. 21-24; p. 49, lns. 5-11.

the unit through purchase orders. Specifically, Deep South performed "preventative maintenance" on the unit in April 2017 (approximately 21 months prior to the accident) and repaired the unit's "main line contractor voltage" in March 2018 (approximately 10 months before the accident). While Deep South was never engaged to repair the unit's brake system prior to the accident, Hoffpauir opined that the unit's swivel cover would have to be removed during routine maintenance and, if the cover was removed, the wiring defect that led to the accident would have been apparent. In this regard, Hoffpauir points to the Periodic Maintenance Manual for the unit which, he opines, requires "removal, inspection, and repacking of the steer bearings was required on a yearly or 2000-hour basis;" he then adds that to "remove, inspect, and repack the steer bearings, the tiller swivel cover and sleeve had to be removed and re-installed."[31] Hoffpauir concludes that if "Deep South repacked the steer bearings as required by the Hyster Periodic Maintenance Manual, then the improper installation of the sleeve and subsequent failure of the brake switch wiring was, more likely than not, caused by improper reassembly of the steering shaft components by Deep South."[32] The summary judgment record reflects that Deep South performed preventative maintenance in 2017. Hoffpauir further states that there is no evidence that Schilling would ever have performed this maintenance and that there "was no evidence to indicate employees of Schilling Distributing Company performed repairs on the lift truck, and, therefore, manipulation of the brake switch wiring and/or the sleeve by Schilling Distributing Company employees is unlikely."[33]

In sum, there is evidence in the record that (1) Deep South performed preventative maintenance on the unit in 2017 and additional maintenance in 2018, (2) proper preventative

---

[31] ECF No. 31-2 at ¶ 13.
[32] *Id.* at ¶ 15.
[33] *Id.* at ¶ 9.

maintenance according to the unit's manual would have required Deep South to remove the "swivel cover," and that the defective wiring would have been apparent, [34] (3) the re-assembly of the steering shaft components during this operation were the likely cause of the accident, (4) Schilling did not perform these maintenance operations, and (5) the actions of Schillings employees were unlikely to cause the wiring defect. This evidence is sufficient to create a triable issue as to whether Deep South caused the wiring defect during maintenance or, alternatively, if Deep South did not cause the defect, whether Deep South breached its duty by not removing the swivel cover as required by the unit's preventative maintenance manual. The evidence supports a reasonable inference that, if the cover had been removed, Deep South would have discovered the wiring defect. While Deep South points to the timing of the maintenance—10 months before the accident for the last repair and 21 months before the accident for the last preventative maintenance—this timing issue is a question for the jury. Similarly, the contradictory witness statements cited by Deep South involve questions of credibility that are not appropriate for summary judgment.

Accordingly, based upon the Court's review of the evidence presented by the parties, the Court finds that there is a genuine question of material fact regarding whether Deep South had a duty of care which was breached in this case. As such, the Motion for Summary Judgment must be DENIED.

THUS DONE in Chambers on this 14th day of July, 2022.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE

---

[34] ECF No. 31, Exhibit A, Affidavit of Jeremy C. Hoffpauir, P.E., ¶ 11.